# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

December 16, 2010

No. 09-60683

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ERWIN DAVID RABHAN

Defendant-Appellant

Appeal from the United States District Court for the
Northern District of Mississippi

Before DAVIS, WIENER, and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant-Appellant Erwin David Rabhan is charged in the Northern District of Mississippi under 18 U.S.C. § 371 for conspiracy to violate 18 U.S.C. § 1014 by making material false statements for the purpose of influencing a federally insured bank and a United States agency in connection with a loan to procure a catfish farm in Mississippi. Rabhan previously pled guilty in the Southern District of Georgia to a single count bill of information charging a § 371 conspiracy to violate § 1014 and 18 U.S.C. § 1344 in connection with making false statements to obtain a loan from a different federally insured bank to build a catfish processing plant in Georgia. Rabhan moved to dismiss the conspiracy count in this case on double jeopardy grounds, arguing that the conspiracy count

No. 09-60683

he pled guilty to in Georgia and the conspiracy count he is charged with in Mississippi are not separate conspiracies but rather are a single overall conspiracy.

The district court denied Rabhan's motion, and he lodged this appeal from that order. Because the government failed to rebut Rabhan's prima facie showing that the conspiracies charged in Georgia and Mississippi are a single conspiracy, we reverse the district court's ruling and conclude that prosecution of the conspiracy count in the Mississippi indictment is barred by double jeopardy.

## I. BACKGROUND

### A. The Georgia Loan

In 2002, Rabhan was indicted in the Southern District of Georgia for conspiracy to defraud the United States and Enterprise National Bank (Enterprise), a federally insured bank located in Florida.[1] The object of the alleged conspiracy was to violate 18 U.S.C. § 1344 (defrauding a financial institution) and § 1014 (making false statements to influence a federally insured institution). The relevant counts in the indictment focused on representations Rabhan made on behalf of Catfish International, Inc. (CII) in his application to Enterprise for a Business and Industry (B&I) loan[2] expected to be guaranteed by the U.S. Department of Agriculture (USDA). The indictment alleged a

---

[1] He was originally indicted on March 27, 2002, and a superseding indictment was handed down on November 8, 2002. All references to the Georgia indictment are to the superseding indictment. The indictment contained 27 counts, but only counts 23-27 are relevant to his double jeopardy claim.

[2] Under the USDA's Business and Industry Guaranteed Loan Program, the USDA guarantees up to 90 percent of a loan obtained from a bank. To obtain the guaranty, a borrower must provide a "minimum of 20 percent tangible balance sheet equity."

No. 09-60683

conspiracy from April 1998 to September 2000 based on the following relevant facts.

Rabhan, a resident of Georgia, was the sole owner of Ehrlich Farms, Inc. (EF). CII, a wholly owned subsidiary of EF, was created to build and operate a catfish processing plant in Georgia that Rabhan planned to build using funds from the loan he and his corporation ultimately obtained from Enterprise. In April 1998, Rabhan submitted to Enterprise an application on behalf of CII for a B&I loan to fund the construction and operation of the processing plant.

Relying on the representations in Rabhan's application, Enterprise applied to the USDA in May and June 1998 to approve and guarantee a portion of the loan. Rabhan's application falsely represented his personal and business income, the membership of CII's board, that Rabhan and CII would contribute $2.1 million for plant equipment, and that a company had expressed interest in buying all of the plant's products. In July 1998, the USDA issued conditional approval for the loan. During the process of negotiating with Enterprise regarding the loan, Rabhan continued to make false representations. In July 1999, he and Lee Jones (the plant's general contractor) prepared false affidavits claiming that Rabhan had prepaid Jones $2.95 million for plant equipment. Rabhan also submitted false financial statements for three of his companies (EF, CII, and Nutrition Dynamics International, Inc.) and false tax returns for EF. After signing the Enterprise loan agreement in July 1999, Rabhan continued to deal with the bank in order to get portions of the loan disbursed. In his applications for those disbursements, he made numerous fraudulent statements regarding costs and the nature and extent of the construction completed. All

3

No. 09-60683

fraudulent representations were made in Georgia and received by Enterprise in Florida.

The Georgia indictment was dismissed when Rabhan pled guilty to a single count bill of information alleging that he, with others "known and unknown," committed a § 371 conspiracy to violate § 1014 and § 1344 from July 1999 to April 2001. In the overt acts section, the bill of information mirrored the language of § 1014 in alleging that Rabhan made false statements to Enterprise to obtain the processing plant loan.[3] The district court accepted Rabhan's plea and sentenced him to serve five years in prison.

### B. The Mississippi Loan

The Mississippi indictment filed in the underlying case charges Rabhan with conspiring in violation of § 371 to obtain a USDA-guaranteed B&I loan from the Gulf Coast Bank (a Louisiana bank) by making material false statements and willfully overvaluing collateral in order to influence the USDA and Gulf Coast, an FDIC-insured institution. Rabhan applied for the loan on behalf of Ehrlich Fish Farms, Inc. (EFFI), another wholly owned subsidiary of EF owned by Rabhan. The indictment names Wilbur Peer, Jimmy Winemiller, William Michael Winemiller, and Charles "Brett" Merrill as coconspirators. Separately indicted coconspirators Paul Barrett and Gregory McMillon have pled guilty to participating in the conspiracy. The indictment alleges a conspiracy from January 1999 to March 2001 based on the following relevant facts.

Rabhan became interested in purchasing a Mississippi catfish farm owned by Jimmy Winemiller in January 1999, and they began to discuss the sale in the

---

[3] The other overt acts in the bill of information referred to a different conspiracy involving Rabhan's business ventures in Africa.

No. 09-60683

spring. McMillon and the Winemillers sought to help Rabhan secure a B&I loan so he could purchase the farm. They enlisted the aid of Wilbur Peer, a friend of Jimmy Winemiller and the Acting Administrator of the USDA Rural Business Cooperative Services, whose duties included determining whether loans guaranteed by his agency should be approved. To obtain the loan to purchase the Mississippi catfish farm, Rabhan falsely claimed that one of his corporations, EFFI, owned 920 acres in Georgia that would serve as collateral for the loan. To prevent the USDA from discovering that this representation was false, Rabhan and his attorney, Merrill, forged a sales contract purporting to sell the property and sent the USDA a letter assigning the sales proceeds as security for the Mississippi loan.

Michael Winemiller provided false information to two appraisers to inflate the value of the farm; McMillon and the Winemillers bribed Paul Barrett for a false inventory of the farm's fish ponds; and Rabhan had Michael Winemiller and Greg McMillon bribe Kent Toler for a fraudulent seining[4] report. Jimmy Winemiller bribed USDA official Wilbur Peer to approve the loan, and Rabhan forged a catfish inventory under the name of appraiser Paul Barrett. These events took place in Georgia, Mississippi, Arkansas, and Louisiana, but Rabhan's alleged actions all occurred in Georgia. The false appraisals and inventories were performed in Mississippi.

### C. District Court Proceedings

Rabhan filed a motion to dismiss the Mississippi indictment on the basis of double jeopardy. The district court acknowledged the additional evidence Rabhan filed in support of his motion but, without discussing that evidence,

---

[4] Seining is used as a method of estimating the number and weight of fish in a pond.

No. 09-60683

concluded that because the Georgia superceding indictment did not focus on the loan to the Gulf Coast Bank, the Mississippi indictment alleged a separate conspiracy. The court agreed with Rabhan that the time periods in the Georgia and Mississippi schemes overlapped and that Rabhan was charged with the same statutory offense in both cases. However, the court determined that the "different co-conspirators, different geographical regions, and different overt acts" involved in the Mississippi case established that the Mississippi indictment alleged a separate conspiracy that was not barred by double jeopardy. In a later order, the district court certified that Rabhan's double jeopardy claim was nonfrivolous, allowing Rabhan to appeal the denial of his motion to dismiss.

## II. Standard of Review

The denial of a nonfrivolous motion to dismiss on double jeopardy grounds is immediately appealable under the collateral order doctrine. *Abney v. United States*, 431 U.S. 651, 662 (1977); *United States v. Dunbar*, 611 F.2d 985, 988-89 (5th Cir. 1980). We review such an order de novo. *United States v. Arreola-Ramos*, 60 F.3d 188, 191 (5th Cir. 1995).

## III. DISCUSSION

### A. Double Jeopardy

Rabhan argues that the Mississippi indictment subjects him to double jeopardy in violation of the Fifth Amendment. The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The prohibition against double jeopardy provides three categories of protection: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against

6

multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989).  In this case, Rabhan seeks protection under the second category.

To support a claim of double jeopardy protecting himself against a second prosecution for the same offense after conviction, Rabhan must show that the offense charged in this case is the same as the offense charged in the Georgia case.  The central inquiry in a double jeopardy claim involving conspiracies is whether one agreement and one conspiracy exists or more than one agreement and more than one conspiracy exist.  As the Supreme Court stated in *Braverman v. United States*:

> When a single agreement to commit one or more substantive crimes is evidenced by an overt act as the statute requires, the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects. Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.

317 U.S. 49, 53 (1942); *see United States v. Levy*, 803 F.2d. 1390, 1393-94 (5th Cir. 1986).

The defendant carries the initial burden of establishing "a prima facie nonfrivolous double jeopardy claim" that the two conspiracies charged are in fact a single conspiracy and therefore charge a single offense.  *United States v. Stricklin*, 591 F.2d 1112, 1117-18 (5th Cir. 1979).  After a defendant establishes a prima facie nonfrivolous case that a single conspiracy exists, the burden of

persuasion shifts, and the government must show by a preponderance of the evidence that the defendant has been charged in separate conspiracies. *Id.* at 1118-19. This shift is appropriate because the government controls the particularity of an indictment; therefore, it should bear the burden of establishing that two different crimes are being charged if the indictments are vague enough to allow a defendant to establish a prima facie case that only a single conspiracy exists. *Id.* Furthermore, it would be impractical to place the burden of persuasion on the defendant, who lacks access to the government's theory of its case or the proof relied on to establish its case. *Id.* at 1118. The clandestine nature of conspiracy makes it difficult for a reviewing court to discern the scope of an alleged conspiratorial agreement. This problem is made more difficult when, as here, the defendant pled guilty to the earlier offense presented in a vague bill of information and no trial record is available from the first offense.

The defendant can satisfy his prima facie case by introduction of the indictment from his previous case, or by offering other record material and evidence normally available at the pretrial stage. *Id.*[5] To meet its burden to rebut the prima facie case, the government "may present however much or little evidence . . . as it deems advisable, subject, of course, to dismissal of the indictment if not enough evidence to rebut the defendant's prima facie showing

---

[5] This court has used information from different sources to inform its analysis of double jeopardy claims. *See, e.g.*, *United States v. Vasquez-Rodriguez*, 978 F.2d 867, 870 (5th Cir. 1992) (using indictment and evidence at trial); *United States v. Kalish*, 690 F.2d 1144, 1147, 1149-50 (5th Cir. 1982) (using trial record, signed pre-trial statements, and grand jury testimony); *United States v. Futch*, 637 F.2d 386, 390 (5th Cir. 1981) (using live testimony). In *United States v. Atkins*, we stated that none of our cases suggested a limitation to sources a court could turn to for facts in the double jeopardy analysis. 834 F.2d 426, 433 (5th Cir. 1987), *overruled on other grounds by Taylor v. Whitney*, 933 F.2d 325 (5th Cir. 1991).

No. 09-60683

is introduced." *Id.* at 1119. Rabhan submitted the indictments, the Georgia bill of information, Georgia grand jury testimony, documents, and other evidence that the government produced during discovery in both cases in an effort to make his prima facie case. The government produced no evidence to rebut Rabhan's submissions. The documents described above are the source material for the facts in the discussion that follows.

## B. Conspiracy

In *United States v. Marable*, we established five factors that we consider in determining whether a defendant is being prosecuted for participation in one conspiracy or multiple conspiracies:

> (1) [T]ime, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place.

578 F.2d 151, 154 (5th Cir. 1978). All of the *Marable* factors must be considered together because no single factor is determinative. *United States v. Delgado*, 256 F.3d 264, 272 (5th Cir. 2001).

*1. Time:*

An overlap in time periods between two alleged conspiracies favors a finding of a single conspiracy, especially when that overlap is substantial. *United States v. Winship*, 724 F.2d 1116, 1126 (5th Cir. 1984). The time periods alleged in the indictments have a 21-month overlap (Georgia: April 1998 to September 2000; Mississippi: January 1999 to March 2001). The overlap in time periods is substantial and favors a finding of a single conspiracy.

*2. Persons acting as co-conspirators:*

No. 09-60683

An overlap in personnel participating in the conspiracy, particularly in key personnel, indicates a single conspiracy. *Levy*, 803 F.2d at 1395. Rabhan is the only individual named in the Georgia indictment. However, through submission of additional evidence discussed below, Rabhan established that other persons participating in the conspiracy in the instant case may also have participated with him in obtaining the Georgia loan.

The Mississippi indictment alleges that Wilbur Peer, a USDA official who approved the USDA guaranty of the Mississippi loan, accepted a bribe in connection with that approval. According to the Georgia indictment, Rabhan signed the Georgia loan agreement with Enterprise on July 19,1999. Discovery documents show that Peer traveled to Georgia in August 1999 to meet with some of the indicted Mississippi coconspirators and that he went again in September to visit Rabhan. While in Georgia, he held public meetings to garner local support for catfish farming to help supply Rabhan's Georgia plant. The documents indicate that, during the August visit, Rabhan offered to use Peer's trucking company to ship catfish from the Mississippi farm to the Georgia plant. Rabhan and Peer also discussed Rabhan's "future plans involving B&I loans." Peer's association with Rabhan with respect to the processing plant around the time the Georgia loan was approved suggests that he was involved in both loans.

Rabhan also provided evidence that Gregory McMillon, who has pled guilty in the Mississippi conspiracy, was involved in the Georgia loan. According to McMillon's interview with government agents, in July 1998 Michael Winemiller told McMillon that Rabhan was interested in buying the catfish farm and hired McMillon to act as the broker for the deal. Sometime after June 1999 (when the Georgia plant loan was made) Rabhan hired McMillon to assist on the plant

No. 09-60683

construction and deal with the Enterprise Bank. Lee Jones (the Georgia plant contractor) testified before the Georgia grand jury that McMillon assisted Rabhan in obtaining progress payments on the Georgia loan. From July 1999 to September 2000, the Georgia indictment charged Rabhan with submitting disbursement application forms containing fraudulent statements about the amount needed to pay contractors, constructions costs, and the type and extent of construction completed. As part of the effort to gain approval for these disbursement applications, Jones testified that Rabhan drafted letters concerning the subcontractor's work on the plant, McMillon re-typed and signed the letters, and they then sent copies to Jones and Enterprise.

According to the USDA and Gulf Coast underwriting files for the Mississippi loan, McMillon was the general manager of Rabhan's parent company and oversaw both the catfish farm and processing plant operations. When he was interviewed by government agents in connection with the Georgia case, McMillon claimed he worked "a great deal" on the processing plant and was able to estimate the percentage of loan funds that were kicked back to Rabhan from the Georgia loan. This information provides circumstantial evidence that McMillon was involved as a conspirator with regard to the Georgia as well as the Mississippi loan.

Although Gregory Hirsch, Rabhan's CPA, was granted immunity in both cases, his grand jury testimony in Georgia indicates that his CPA firm compiled the allegedly false financial statements for Rabhan's parent company involved in both loans. Other evidence indicates that those statements were submitted to obtain both the Georgia and Mississippi loans. In Gulf Coast's review of the

11

No. 09-60683

Mississippi farm loan application, it noted that Hirsch was acting as the Chief Financial Officer/Controller of the applicant company.

Rabhan's evidence that McMillon actually presented some of the false information to Enterprise Bank and the implication that Peer was involved in the USDA guaranty of that loan raise a reasonable inference that they participated in the Georgia conspiracy. The evidence that Hirsch compiled the financial statements used in obtaining both loans also raises a reasonable inference that he was involved in the conspiracy in both Mississippi and Georgia. Contrary to the government's argument, the evidence reflects that they were more than mere business associates of Rabhan. *See United States v. Henry*, 661 F.2d 894, 897 (5th Cir. 1981). Although the government alleged in the Georgia indictment and bill of information that "others known and unknown" conspired with Rabhan, the government offered no evidence to show the identity of the "known" conspirators to rebut Rabhan's proof.

In sum, Rabhan, who was clearly a central figure in both indictments, has presented evidence sufficient to raise the inference that McMillon, Peer, and Hirsch were connected to both loans and both cases. As the overlap of central characters between cases is even more important than the number of overlapping characters, Rabhan has satisfactorily carried this factor even though some of the Mississippi personnel were not involved in both loans. *See Levy*, 803 F.2d at 1395.

*3. Statutory offenses charged:*

In both prosecutions, Rabhan was charged with a § 371 conspiracy to defraud an FDIC-insured bank and a United States government agency through violation of 18 U.S.C. § 1014, by making false statements to influence the actions

No. 09-60683

of a federally insured institution. The Georgia indictment and bill of information also included an underlying § 1344 bank fraud offense.  The government argues that this additional charge reflects separate conspiratorial agreements to engage in different statutory offenses.  Although the Georgia bill of information mirrored only § 1014 in the overt acts section, the conduct alleged to violate § 1014 would also establish a § 1344 violation.  Additional charges in one case may still lead to a finding that there is only one conspiracy, particularly when "the statutes that do not overlap are related."  *Levy*, 803 F.2d at 1392.  Rabhan therefore prevails on this factor because the overlap in statutory offenses is almost identical and the statutes that do not overlap are related.

*4. Overt Acts/Nature and Scope of the Agreement:*

Although there are no overlapping overt acts in the indictments, "the precise bounds of a single conspiracy seldom will be clear from the indictment alone."  *Marable*, 578 F.2d at 153.  This prong of the test considers the overt acts and other descriptions of the conduct charged, which may be helpful in gaining insight "into the nature and scope of the allegedly separate conspiracies the government seeks to punish."  *Id.* at 155.  Rabhan submitted numerous documents to the district court that he obtained from the government during discovery in the Georgia and Mississippi cases, as well as testimony presented to the Georgia Grand Jury, that are helpful in this respect.

It is telling to observe first that the government obtained and produced witness statements and grand jury testimony in the Georgia case about the Mississippi loan and the fraudulent actions Rabhan and others took to obtain it.  *See United States v. Nichols*, 741 F.2d 767, 772 (5th Cir. 1984) (evidence of what

No. 09-60683

the government claimed was a second conspiracy was introduced at the first trial, indicating a single conspiracy).

The documents indicate that the Georgia loan and the Mississippi loan are related. The USDA State Office Executive Loan Committee Report for the Mississippi loan considered the potential revenue the catfish farm could expect to generate and concluded that the Gulf Coast Bank's analysis was acceptable because the Georgia processing plant committed to purchase 100 percent of the farm's fish. Both reports identified other possible purchasers, but the Gulf Coast Bank recognized the company's overall strategy to form a comprehensive integrated catfish growing and processing operation. The report further stated that Rabhan and McMillon had identified the Mississippi farm as a supplier for the Georgia plant as part of this overall strategy.

In *Levy*, the defendants were involved in a series of fraudulently obtained loans in which they obtained new loans to cover the previous loans. 803 F.2d at 1393. As with Rabhan, the indictments named separate overt acts, but the court concluded that the transactions in the indictments were related and therefore "tend[ed] to prove a single agreement rather than multiple agreements." *See id.* at 1396. As in *Levy*, the above described evidence shows that Rabhan's loans were related, raising the "inference that only one agreement existed." *Id.* The government argues that the loan files do not say that completion of the processing plant was a requirement for the Mississippi loan. However, the government again fails to draw our attention to or produce any evidence showing that these loans were *not* part of an integrated project or strategy. Because the conspiratorial agreement to make fraudulent representations to obtain the Georgia loan from Enterprise Bank was interrelated with the loan obtained

14

No. 09-60683

through fraud in the instant case, this prong favors a finding of a single conspiracy.

*5. Places where the events of the alleged conspiracy occurred:*

When two alleged conspiracies overlap geographically, it is appropriate to consider where they are based as an indicator of whether the geographic overlap is significant. *See Henry*, 661 F.2d at 897. All events related to the Georgia loan occurred in Georgia and Florida, with Georgia as the "base" of operations. The events related to the Mississippi loan occurred in Mississippi, Georgia, Arkansas, and Louisiana. The "base" of operations was in Georgia and Mississippi, where the central co-conspirators created plans and made false representations. Therefore, the geographic overlap between the bases of operation of the two schemes is significant and favors a finding of a single conspiracy.

## C. Analysis

Rabhan established a prima facie case in which all the *Marable* factors weigh in favor (some more strongly than others) of finding a single conspiracy. The time and statutory offense factors clearly overlap and favor a finding of a single conspiracy. Rabhan has presented enough evidence to show that the loans shared at least one operational base in Georgia. He has shown that several persons may be common to both loan schemes. Rabhan has also presented information showing the loans were linked, which suggests that the government was prosecuting a single conspiracy involving multiple loans in the Georgia case.

In the face of a strong prima facie case, the government elected to produce no evidence tending to show that more than one conspiracy existed. The government has therefore failed to carry its burden of persuasion to establish by

15

No. 09-60683

a preponderance of the evidence that two separate conspiratorial agreements existed.

## IV. CONCLUSION

For the reasons stated above, we REVERSE the district court's order denying the motion to dismiss and REMAND for entry of an order granting the motion and dismissing the conspiracy count against Rabhan.

REVERSED and REMANDED.