# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 20, 2012

No. 10–20705

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

JUAN ISAIS ESPARZA, also known as Juan Esparza Isais, also known as Juan Isais Esparza, Jr., also known as Juan Isais,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before DeMOSS, CLEMENT, and ELROD, Circuit Judges.

HAROLD R. DeMOSS, JR., Circuit Judge:

Juan Isais Esparza appeals his conviction for illegal reentry into the United States under 8 U.S.C. § 1326. The sole issue before us is whether the record evidence is sufficient to justify the trial judge's conclusion that Esparza was an alien at the time of his reentry. We find that the record evidence is sufficient to conclude that Esparza was an alien. We also find that the nunc pro tunc divorce decree obtained in 2010 purporting to retroactively rearrange Esparza's custody status in 1994 does not raise a reasonable doubt as to his alienage. Esparza's conviction is affirmed.

No. 10–20705

## I.

Juan Isais Esparza was born in Mexico on September 2, 1976, to parents who were both Mexican nationals. In 1981 he legally immigrated to the United States where he lived with his father, mother, and four younger siblings. In 1989 his father became a naturalized U.S. citizen but his mother never did.

Esparza's parents were divorced on June 14, 1994. The Texas state court divorce decree filed in June 1994 (1994 Decree), appointed his mother the "Managing Conservator of the children [with] all the rights, privileges, duties, and powers of a parent, to the exclusion of the other parent." One of the managing conservator's rights is to establish a minor child's residence. The 1994 Decree also appointed his father a "Possessory Conservator of the children" with visitation rights. Additionally, the 1994 Decree provided that Esparza's father would pay monthly child support to his mother for all five minor children, including Esparza, until they either turned 18 years old or graduated high school. It specified that "the $500.00 child support would be paid for 4 children as well as for 5, although $500 was announced for 5 children" (i.e., the initial amount of child support owed by Esparza's father would not decrease until both Esparza and his next oldest sibling turned 18 years old or graduated from high school).

Esparza turned 18 years old on September 2, 1994, two-and-a-half months after his parents' divorce. In 1999 Esparza was convicted of an aggravated felony for which he was sentenced to 105 months of imprisonment. He was deported to Mexico in 2007 after serving his sentence. He returned to the United States without permission several months later in August 2007.

While imprisoned in 2006, Esparza applied to the United States Citizenship and Immigration Services (USCIS) for a certificate of citizenship, asserting that he had automatically derived citizenship in 1994 from his U.S.

2

No. 10–20705

citizen father pursuant to 8 U.S.C. § 1432(a) (1994).[1] However, the USCIS denied his application in 2008 after finding that his mother had been granted custody of him following the divorce in 1994 and that she was not a U.S. citizen from whom he could derive citizenship under § 1432(a). Esparza did not appeal the USCIS's decision.

Immigration officials discovered Esparza in the United States in November 2009, and in December 2009 they charged him with illegal reentry in violation of 8 U.S.C. § 1326(a) and (b). After he was charged but before his trial commenced, his father filed a motion requesting that a Texas state court enter a divorce decree nunc pro tunc because "there were certain clerical mistakes that were made concerning residence of the children and the payment of child support" in the 1994 Decree. The motion was unopposed and no evidence was presented in support of the motion.

On January 15, 2010, the Texas state court issued the divorce decree nunc pro tunc (NPT Decree) as requested. The NPT Decree was approved in form and substance by both parents, attached to the father's motion, and granted and filed by the state court with no changes. The court did not hold a hearing prior to issuing the NPT Decree, and a different state court judge signed the NPT Decree than had signed the 1994 Decree. The NPT Decree purported to retroactively alter Esparza's custody arrangement set forth in the 1994 Decree by providing that his father was appointed his managing conservator and his mother was appointed his possessory conservator (it did not purport to change his mother's appointment as managing conservator of Esparza's four younger siblings). The NPT Decree also provided that Esparza resided with his father immediately

---

[1] Section 1432(a) was repealed by the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631 (2000), but remains applicable because Esparza's derivative citizenship would have vested in 1994, if ever, during the two-and-a-half months when his parents were divorced and he was still a minor child.

No. 10–20705

following the divorce, the other children resided with their mother, and neither parent owed child support for Esparza.

In June 2010 Esparza waived his right to a jury trial and the parties proceeded to a bench trial by memoranda, stipulation, and documentary evidence without calling any witnesses. Included in the documentary evidence were the 1994 Decree and the NPT Decree; evidence of Esparza's drug conviction, deportation, and subsequent reentry into the United States; evidence of the USCIS's denial of his certificate of citizenship application; and two unsworn, undated statements made by Esparza's parents stating that Esparza was residing with his father immediately after the divorce.

In order to convict Esparza of illegal reentry, the government was required to prove that (i) he was an alien at the time he reentered the United States; (ii) he had previously been deported from the United States; (iii) he had thereafter been found in the United States; and (iv) he did not have permission to reenter the United States. *See* § 1326(a). However, both parties stipulated that the only contested issue was whether the government could prove beyond a reasonable doubt that Esparza was an alien.

After hearing argument and considering all of the record evidence, the district court determined that the 1994 Decree, not the NPT Decree, correctly described Esparza's custody arrangement immediately following his parents' divorce in June 1994. As a result the district court concluded that Esparza was an alien when he reentered the United States. It subsequently found Esparza guilty of illegal reentry and sentenced him to 77 months of imprisonment and three years of supervised release. Esparza timely appealed his conviction.

## II.

Our review of a bench trial conviction focuses on "whether the finding of guilt is supported by substantial evidence, i.e., evidence sufficient to justify the trial judge, as the trier of fact, in concluding beyond a reasonable doubt that the

No. 10–20705

defendant is guilty." *United States v. Turner*, 319 F.3d 716, 720 (5th Cir. 2003) (quoting *United States v. Mathes*, 151 F.3d 251, 252 (5th Cir. 1998)). We view all evidence in the light most favorable to the government and defer to reasonable inferences drawn by the trial court. *Id.* at 720–21. Acquittal is required only where the evidence "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence." *Id.* at 721 (quoting *United States v. Brown*, 186 F.3d 661, 664 (5th Cir. 1999)).

### III.

### A.

An alien is "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). A person such as Esparza who was not born in the United States may acquire U.S. citizenship "only as provided by Acts of Congress." *Miller v. Albright*, 523 U.S. 420, 424 (1998). Because this is a criminal case, it is the government's burden to prove beyond a reasonable doubt that Esparza was an alien when he reentered the United States. *See United States v. Valdez-Lopez*, 444 F. App'x 829, 831 & n.1 (5th Cir. 2011) (citing the pattern jury instruction for § 1326(a)).

The government argues that there is substantial evidence in the record that Esparza was an alien when he reentered the United States. The record shows that (i) he was born in Mexico; (ii) the 1994 Decree appointed his non-citizen mother as his managing conservator until he turned 18 years old; (iii) he was deported by immigration officials in 2007; and (iv) the USCIS denied his application for a certificate of citizenship in 2008 because it found that he was in the custody of his non-citizen mother following the divorce and therefore could not derive citizenship from his U.S. citizen father pursuant to § 1432(a).

However, Esparza contends that, notwithstanding the other evidence, the NPT Decree's retroactive custody arrangement raises a reasonable doubt as to whether he was in fact an alien when he reentered the United States. Under

No. 10–20705

§ 1432, a minor child legally residing in the United States automatically derives citizenship when (i) his parents become legally separated, (ii) one (but not both) of his parents becomes a naturalized U.S. citizen, and (iii) the naturalized parent has "*sole* legal custody" of the child. *See* § 1432(a); *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 398 (5th Cir. 2006). Thus, if Esparza was in the sole legal custody of his U.S. citizen father immediately following his parents' divorce, he would have automatically become a U.S. citizen when he was still a minor. He argues that the NPT Decree correctly sets forth his custody arrangement in 1994—i.e., that from June to September 1994 he was actually residing with his father and his father was his managing conservator—and that therefore the record evidence gives equal or nearly equal support to his theory that he was not an alien because he automatically derived citizenship from his father pursuant to § 1432.

The district court carefully considered the NPT Decree and the circumstances surrounding its issuance and determined that the NPT Decree did not legitimately call into question the validity of the 1994 Decree or the other evidence presented by the government establishing that Esparza was an alien. *United States v. Esparza*, 719 F. Supp. 2d 782, 785 (S.D. Tex. 2010). We agree with the district court.

Federal naturalization law exists independent of state family law, and federal courts do not give state court divorce and custody decrees "conclusive effect" in federal proceedings. *Bustamante-Barrera*, 447 F.3d at 400. Therefore, we must look beyond the facial validity of such decrees in order to determine their actual legal effect, if any, in federal cases. In Esparza's case, the 1994 Decree was issued by a Texas state court judge who had presided over and was personally familiar with the parents' divorce proceedings. It was agreed to both by Esparza's parents and the court, and through it the court clearly appointed Esparza's mother as his managing conservator and his father as his possessory

conservator. The custody arrangement was effective as of June 14, 1994, and went unchallenged until January 15, 2010. During that time (i) Esparza and all four of his younger siblings turned 18 years old; (ii) he was convicted of a federal drug crime and deported; (iii) he was denied a certificate of citizenship after the USCIS determined that he was in the custody of his non-citizen mother following the divorce and therefore had not automatically derived citizenship from his father (a decision he did not appeal); and (iv) he was found again in the United States without permission and charged with illegal reentry. For almost sixteen years the 1994 Decree was binding on the parties and its correctness was never questioned.

Not until January 15, 2010, was there any support for Esparza's theory that he automatically derived citizenship from his father in 1994. Once issued, the NPT Decree purported to retroactively rearrange Esparza's custody from June to September 1994 by appointing his father as his managing conservator and by stating that he was residing with his father immediately following the divorce. Because the NPT Decree appears on its face to have been validly entered by a Texas state court judge, Esparza asserts that his retroactive custody arrangement must raise a reasonable doubt as to whether he was an alien when he reentered the United States in August 2007.

However, unlike the 1994 Decree where there was no question of its correctness for almost sixteen years, there are numerous facts that call into question the correctness of the NPT Decree's retroactive custody arrangement. First, the NPT Decree's timing is highly suspect. By January 2010, Esparza and each of his siblings had already reached adulthood, thereby making any custody rearrangement a moot point for purposes of Texas family law. In fact, there appears to be no legitimate state law reason for the NPT Decree. Moreover, the NPT Decree was not sought until *after* Esparza had already been charged with illegal reentry. Neither Esparza nor his parents sought a nunc pro tunc divorce

decree prior to his eighteenth birthday in 1994, during the proceedings which led to his deportation in 2007, or immediately following the USCIS's denial of his certificate of citizenship application in 2008, each of which would have been a more logical time to amend the 1994 Decree than waiting until the current proceedings had already commenced almost sixteen years later.

Second, the Texas state court judge who issued the NPT Decree had no personal familiarity with the 1994 divorce proceedings. He held no hearings and entertained no additional evidence to help him determine the factual and legal appropriateness of issuing the NPT Decree. He simply signed the draft NPT Decree attached to the father's motion without further inquiry and dated it January 15, 2010, the same day it was received.

And third, there is no other reliable evidence in the record that supports the correctness of the NPT Decree's retroactive custody arrangement. Esparza's father's motion generically alleged "certain clerical mistakes" as the reason for seeking the NPT Decree, but it did not provide any evidence to support such an allegation. And the parents' short statements regarding Esparza's residency in 1994 were unsworn, lacked the critical dates necessary to assess their reliability, and addressed his residency rather than his legal custody status following the divorce.

Other than the mere existence of the NPT Decree—which the district court reasonably determined to be unreliable for purposes of federal law—the record lacks any indication that the custody arrangement set forth in the 1994 Decree failed to accurately describe Esparza's actual custody status from June to September 1994. Therefore, viewing all of the evidence in the light most favorable to the government and deferring to all reasonable inferences drawn by the district court, we conclude that the record evidence does not give "equal or nearly equal" support to Esparza's theory that he automatically derived citizenship from his father in 1994. *See Turner*, 319 F.3d at 721 (quoting *Brown*,

No. 10–20705

186 F.3d at 664). There is substantial evidence showing that Esparza was an alien when he reentered the United States and the NPT Decree does not raise a reasonable doubt as to that conclusion. Acquittal is not required.

**B.**

Although this issue is one of first impression in the criminal law context, we find support for our determination in case law dealing with § 1432 and the legal effect of state court nunc pro tunc decrees in federal immigration cases.

In *Fierro v. Reno*, a 35-year-old petitioner sought to avoid removal by immigration officials. 217 F.3d 1, 2–3 (1st Cir. 2000). After removal proceedings had commenced, the petitioner's mother obtained a nunc pro tunc custody judgment that purported to retroactively alter the original custody judgment entered twenty-five years earlier when the petitioner was a minor child. *Id.* In her motion seeking the nunc pro tunc judgment, the mother admitted that the judgment was necessary for the petitioner to derive citizenship through his father and avoid being deported. *Id.* at 4. The petitioner argued that "state law presumptively governs [legal relationships between parents and children and therefore] . . . the matter is controlled by the state probate court [nunc pro tunc custody] judgment." *Id.* The *Fierro* court rejected that argument while admitting that it was "not without a certain surface plausibility." *Id.* It stated that Congress did not intend an "*ex post* modification of a custody decree" to govern citizenship determinations under § 1432, and that to hold otherwise would permit state courts to create loopholes in the federal immigration laws. *Id.* at 6. Acknowledging that there may be cases where a later-in-time state court custody judgment should be given effect by federal courts, the court concluded that the original judgment had established the petitioner's legal custody status as a minor child for purposes of § 1432. *Id.* at 5–7.

This court followed *Fierro*'s logic and reasoning in *Bustamante-Barrera*, 447 F.3d at 400–02. In *Bustamante*, while the petitioner was seeking to avoid

9

removal by immigration officials, the petitioner's mother sought and obtained a nunc pro tunc divorce decree "which purported to award [the] mother *sole* legal custody retroactively effective to" the date of the divorce ten years earlier. *Id.* at 391. This court rejected the petitioner's argument that the nunc pro tunc decree should be given "conclusive effect," and in doing so emphasized that a minor child's "custody status prior to his eighteenth birthday is determined by federal law [and] is *not* dependent on the law of any particular state." *Id.* at 400. It stated that even if there was a legitimate state purpose for the nunc pro tunc decree, a federal court would not be bound by it when deciding petitioner's legal custody status for purposes of federal law. *Id.* Allowing that "[i]t is at least possible that circumstances could exist in which such a [nunc pro tunc] decree would legitimately demonstrate that an alien child had in fact been in the sole legal custody of his one naturalized parent prior to his eighteenth birthday," the court ultimately "refuse[d] to reward such blatant manipulation of federal law." *Id.* at 401. Affirming the removal decision, the court held that "the uncontradicted evidence confirms that the amended decree was brazenly obtained for the sole purpose of manipulating federal immigration law and had no legitimate state purpose whatsoever." *Id.* at 402.

We recognize that neither *Bustamante* nor *Fierro* is controlling precedent because in both cases the burden of persuasion was on the petitioner rather than the government. Nevertheless, we find them to be highly persuasive. Like the courts in *Bustamante* and *Fierro*, the district court in this case properly considered the timing and other indicia of reliability (or unreliability) when it determined that (i) the 1994 Decree correctly described Esparza's custody arrangement following his parents' divorce, and (ii) the NPT Decree was factually unreliable, had no legal effect under § 1432, and did not raise a reasonable doubt that Esparza was an alien. We agree with that determination. We also recognize that it may be possible for a future criminal defendant to use

No. 10–20705

a nunc pro tunc decree to raise a reasonable doubt as to his status as an alien. *See Bustamante*, 447 F.3d at 401; *Fierro*, 217 F.3d at 7. However this is not that case.

## IV.

For the foregoing reasons we find that the record evidence was sufficient for the district court to conclude beyond a reasonable doubt that Esparza was an alien when he reentered the United States.

AFFIRMED.

No. 10–20705

JENNIFER WALKER ELROD, Circuit Judge, dissenting:

Respect for state courts is a basic premise of Our Federalism. *See McNair v. Allen*, 515 F.3d 1168, 1175 (11th Cir. 2008) ("Respect for the equality and independence of state courts is a cornerstone of our judicial system."); *cf. Younger v. Harris*, 401 U.S. 37, 44–45 (1971) (discussing the importance of comity vis-a-vis state courts). Given this fundamental principle of respect, we should be particularly reluctant to disregard a state court decree as little more than a sham. Instead, we should presume it to be correct. Because the district court and the majority have done just the opposite, I respectfully dissent.

By the government's concession, the Texas court's valid *nunc pro tunc* (NPT) decree—if honored in federal court—would conclusively establish Esparza's derivative citizenship defense.[1] Yet neither the district court nor the majority has accorded proper respect to that decree. The district court erred by presuming the invalidity of the NPT decree and instead presuming valid the superseded 1994 decree. *See United States v. Esparza*, 719 F. Supp. 2d 782, 784 (S.D. Tex. 2010) ("The Court accepts the 1994 Decree as presumptively valid . . . .").[2] The majority compounds this error. It stresses the "highly suspect" timing of the issuance of the decree[3] and speculates that the Texas judge who signed the NPT decree lacked personal familiarity with the 1994 divorce

---

[1] *Nunc pro tunc* literally means "now for then." Black's Law Dictionary 1174 (9th ed. 2009). In Texas, *nunc pro tunc* decrees are available to correct clerical errors in a judgment and "relate[] back to the date of the original judgment." *Daniels v. Comm'n for Lawyer Discipline*, 142 S.W.3d 565, 573 (Tex. App.—Texarkana 2004, no pet.).

[2] The district court relied heavily on *Bustamante-Barrera v. Gonzales*, 447 F.3d 388 (5th Cir. 2006). Unlike this criminal case, however, *Bustamante* arose in the naturalization context, where the petitioner bears the burden of proof and the court must resolve all doubts in favor of the government. *Id.* at 394–95. Moreover, *Bustamante* explicitly left open the possibility that future NPT decrees could establish derivative citizenship. *Id.* at 401.

[3] Never mind that NPT decrees, by their nature, will often be sought years after the original judgment, when a clerical mistake is discovered.

No. 10–20705

proceedings.[4]  Our state courts deserve better from us.  I would reverse and remand for the district court to apply the proper presumption—that the NPT decree is valid and accurate unless and until disproven by the government.

---

[4] Never mind that this objection was not raised before the district court and, even if true, is immaterial to the legitimacy of the decree.

13