# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30065

United States Court of Appeals
Fifth Circuit

**FILED**
July 13, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

TYRONE LARRY SMITH, also known as Marques Stewart, also known as Tyrone Letron Smith, also known as Tyrone Latron Smith, also known as Tyrone L. Smith, also known as Troy Green, also known as Antoine Lavell Franklin, also known as Michael Mummadd, also known as Taz; LACOYA WASHINGTON,

      Defendants - Appellants

Appeals from the United States District Court
for the Western District of Louisiana

Before HIGGINBOTHAM, JONES, and GRAVES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Defendants Tyrone Smith and Lacoya Washington were convicted of sex trafficking involving a fourteen-year-old girl. On appeal, Washington challenges the sufficiency of the evidence against her, the denial of her motion for severance, and the reasonableness of her sentence. Finding no error, we AFFIRM her conviction. Smith challenges the sufficiency of the evidence against him, the denial of his motion to suppress, and the denial of his motion to reassert his right to counsel. We find that the district court erred in denying Smith's motion for counsel. We REVERSE his convictions.

No. 17-30065

I.

In the summer of 2015, Tyrone Smith resided with Lacoya Washington and her four children at Washington's apartment in Shreveport, Louisiana. During this time, Smith met B.R., a fourteen-year-old from Texas, on the dating website Plenty of Fish. The relationship moved to texting and telephone calls. B.R. told Smith that she was nineteen. Smith suggested that B.R. come to Louisiana and live with him, and B.R. agreed.

In June 2015, B.R. took a Greyhound bus to Shreveport. B.R. testified that Washington picked her up at the bus station and the two met Smith at the apartment. Shortly after her arrival, Smith told B.R. "there's someone outside waiting and you pretty much need to go to the car, have sex with him, get money, and come inside." B.R. testified that when she objected, Smith told her that if she refused, she would "get in trouble for it." She said that after the incident Smith told her "[t]his is what you're going to be doing from now on. You better be okay with it." Smith arranged similar "car dates" three or four times.

Smith later instructed B.R. to take photographs on his cell phone, some of which he sent to Washington. Smith used the photographs to create an online advertisement for prostitution on the website Backpage.com. He paid for the ad with a prepaid gift card bought with Washington's money. Smith used Washington's email address and his phone number. B.R. claimed that Smith and Washington collaborated on the text of the ad. The next day, Smith posted a second ad using his own email address.

B.R. testified that when men responded to the ad, Smith or Washington told her what to charge. B.R. estimated that she had sex with six men who responded to the ad. She testified that Washington or Washington's boyfriend drove her to the motels to meet the men. Washington also paid for the motel rooms, using money that Smith gave her from customers. B.R. testified that

2

after a customer left, they would "keep [the room] for the night" and "drink [and] do coke." Washington provided the cocaine.

On July 6, Smith and B.R. got into a fight because she had locked him out of the hotel room. Smith slapped B.R. and told Washington to leave the room. The fight continued. B.R. said she wanted to leave and locked herself in the bathroom. Smith entered the bathroom and hit B.R. approximately three times with a closed fist. He then got his gun, threatened suicide, and pointed the gun at B.R. The two eventually "calmed down" and went to sleep.

On July 7, Shreveport Police Department Officer Miles discovered the online ads, suspected that B.R. was a minor, and arranged a sting operation. Miles called the listed number to set up a meeting. When they arrived at the hotel, SPD officers detained B.R., who told them that she was a minor, that Smith was her pimp, and that he had beaten her. Officers searched the room and found Smith's telephone, the prepaid gift card, and a loaded gun.

Officers learned that the room was rented under Washington's name, located her, and took her into custody where she made a statement. Washington told the police she believed B.R. continued to engage in prostitution because she was afraid of Smith. Officers also located Smith, who provided a statement where he admitted that he had met B.R. online and that he knew she was having sex with adult men in Shreveport.

Smith and Washington were charged with sex trafficking in violation of 18 U.S.C. § 1591(a)(1) & (b)(1)–(2). Smith was also charged with interstate prostitution by coercion or enticement under 18 U.S.C. § 2242. Smith and Washington were jointly tried in a three-day bench trial. As explained in more detail below, Smith proceeded pro se. Washington was represented by counsel.

Both were convicted as charged. Smith received a 384-month sentence for Count 1 and a concurrent 240-month sentence for Count 2. Washington was sentenced to 292 months.

No. 17-30065

## II.

On appeal, Washington challenges the sufficiency of the evidence against her, the district court's denial of her motion for severance, and the reasonableness and constitutionality of her sentence.

## A.

Washington argues that the government provided insufficient evidence that she intentionally assisted or participated in trafficking B.R.[1] She admits that she participated in a series of "otherwise innocent conduct" including renting the hotel rooms, driving Smith and B.R. to hotels, and socializing with them. She further concedes that "at some point she became aware of what was going on and did nothing to stop it," but argues that "failure to protect B.R. is not equivalent to intentionally assisting in the crime."

"When a defendant challenges a bench-trial conviction on sufficiency-of-the-evidence grounds, we focus on 'whether the finding of guilt is supported by substantial evidence, *i.e.*, evidence sufficient to justify the trial judge, as the trier of fact, in concluding beyond a reasonable doubt that the defendant is guilty.'"[2] In doing so, "[w]e 'should not weigh evidence, nor should [we]

---

[1] Washington was convicted under 18 U.S.C. § 1591, which criminalizes sex trafficking of a minor and sex trafficking by force, fraud, or coercion. To show a violation of Section 1591, the government must prove the following elements:

> (1) that the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means [the victim];
> (2) that the defendant committed such act knowing or in reckless disregard of the fact that means of force, threats of force, fraud coercion, or any combination of such means, would be used to cause the person to engage in a commercial sex act [or that] the person had not attained the age of 18 years and would be caused to engage in a commercial sex act;
> (3) that the defendant's acts were in or affected interstate [or] foreign commerce.

FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Criminal Cases), Offense Instruction No. 2.86 (2015) (internal punctuation omitted).

[2] *United States v. Tovar*, 719 F.3d 376, 388 (5th Cir. 2013) (quoting *United States v. Esparza*, 678 F.3d 389, 392 (5th Cir. 2012)) (some internal quotation marks omitted).

determine the credibility of witnesses.'"[3] Instead, "we must 'view all evidence in the light most favorable to the government and defer to all reasonable inferences by the trial court.'"[4]

The record is replete with evidence of Washington's involvement. At trial, the government presented evidence that Washington permitted Smith to use her money and email address to post an online prostitution advertisement. Washington allegedly approved the ad's text and some of the photographs. According to B.R., Washington told her how much to charge customers, drove her to meet clients, and obtained the hotel rooms. Washington denied many of these claims at trial; however, the trial court made clear that it found Washington's innocent explanations "noncredible," and there is ample evidence supporting her knowing involvement.

B.

Washington also contends that the district court erred in trying her alongside Smith. We review the denial of a motion to sever for abuse of discretion.[5] "The threshold for finding such discretion to have been abused . . . is especially high when the trial is to be to the court rather than a jury."[6] "[T]he defendant bears the burden of showing specific and compelling prejudice that resulted in an unfair trial, and such prejudice must be of a type against which the trial court was unable to afford protection."[7] Washington "is entitled to reversal . . . only if [s]he identifies specific events during trial and demonstrates that these events caused [her] substantial prejudice."[8]

---

[3] *Id.* (quoting *United States v. Turner*, 319 F.3d 716, 720 (5th Cir. 2003)) (alterations in original).

[4] *Id.* (quoting *United States v. Mathes*, 151 F.3d 251, 252 (5th Cir. 1998)).

[5] *United States v. Thomas*, 627 F.3d 146, 156 (5th Cir. 2010).

[6] *United States v. Cruz*, 478 F.2d 408, 414 (5th Cir. 1973).

[7] *Thomas*, 627 F.3d at 157 (internal quotation marks omitted).

[8] *Id.*

No. 17-30065

Before trial, Washington filed a motion for severance, arguing that her involvement in the crime was "minimal" and expressing concern that she "risk[ed] being punished for the alleged acts of Mr. Smith." The trial court originally granted this motion, and reconsidered its ruling after the parties later agreed to a bench trial. Upon reconsideration, the district court found that severance was "no longer warranted."[9]

Washington now argues that she was unfairly prejudiced by being tried alongside Smith because "[t]hroughout the whole proceeding, [he] displayed disruptive and erratic behavior" and "[t]he acrimonious environment he created made it impossible for [Washington] to get a fair trial." We find no abuse of discretion here. Washington does not identify "specific events" that caused "substantial prejudice."[10] Instead, she alleges only general "disruptive" and "erratic" behavior. The mere fact that a co-defendant proceeded pro se does not, on its own, create a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the [factfinder] from making a reliable judgment about guilt or innocence."[11] This is particularly true where, as here, the case was tried to a judge, creating an "especially high" threshold for abuse of discretion.

## C.

Finally, Washington challenges her sentence as procedurally, substantively, and constitutionally unsound. First, she contends that the court

---

[9] The court specifically stated that it was "fully able to control any courtroom outbursts by Smith and the potential for spill-over prejudice is eliminated," that "one trial [would] serve judicial economy and obviate the need for the minor victim to testify in two separate trials," and that *Bruton* is inapplicable to bench trials.

[10] *Thomas*, 627 F.3d at 157.

[11] *United States v. Tarango*, 396 F.3d 666, 672–73 (5th Cir. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)). *See, e.g.*, *United States v. Mikolajczyk*, 137 F.3d 237, 241–42 (5th Cir. 1998) (finding no abuse of discretion in refusing to sever where some defendants proceeded pro se).

No. 17-30065

committed procedural error when it applied two-level enhancements for "undue influence" and "use of a computer." Next, she claims her sentence is substantively unreasonable. Finally, she argues that her sentence is cruel and unusual punishment violative of the Eighth Amendment.

Washington's PSR assigned her a base offense level of 34 with four two-level enhancements, resulting in a total offense level of 42. With a criminal history level I, this resulted in a Guidelines range of 360 months to life. At sentencing, Washington objected to three of the enhancements. The court granted Washington's objection to an obstruction of justice enhancement, but it applied two-level enhancements for undue influence and use of a computer service. These adjustments lowered Washington's offense level to 40 and her Guidelines range to 292 to 365 months. The court then sentenced Washington to 292 months.

"This court reviews a sentencing decision for reasonableness using a two-step process. First, the court determines whether the district court committed any significant procedural error. Under the first step, this court reviews the district court's interpretation or application of the sentencing guidelines *de novo*, and its factual findings for clear error. If there is no procedural error or the error is harmless, this court then reviews the substantive reasonableness of the sentence imposed for abuse of discretion."[12]

1.

The Sentencing Guidelines impose a two-level enhancement when a participant in the criminal activity "unduly influenced a minor to engage in prohibited sexual conduct."[13] This enhancement applies where "a participant's influence over the minor compromised the voluntariness of the minor's

---

[12] *United States v. Groce*, 784 F.3d 291, 294 (5th Cir. 2015) (internal citations and quotation marks omitted).

[13] U.S.S.G. § 2G1.3(b)(2)(B).

behavior," and there is a rebuttable presumption that such influence occurs when the participant is at least ten years older than the minor victim.[14] To apply a sentencing enhancement, the court must find facts supporting the enhancement by a preponderance of the evidence.[15]

Washington argues that the evidence failed to prove she unduly influenced B.R. to engage in prostitution. She concedes that Smith did so, but claims she was "not a part of that plan." The district court did not err in applying this enhancement. First, as the court noted, the rebuttable presumption applied due to Washington's age, and she did not offer any evidence to rebut that presumption. Second, the record contains evidence to support the district court's findings that Washington was "actively involved in this entire matter, beginning almost immediately upon [B.R.]'s arrival to Shreveport," and that she exercised undue influence over B.R.

2.

The Guidelines authorize a two-level enhancement when the offense involves "the use of a computer or an interactive computer service to . . . entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor."[16]

Washington argues that this enhancement should not apply because she personally "had no involvement with a computer or computer service." However, the computer use enhancement can apply even where the defendant was not the one directly soliciting customers.[17] Moreover, the district court

---

[14] U.S.S.G. § 2G1.3(b)(2)(B) cmt. n.3(B)

[15] *United States v. Anderson*, 560 F.3d 275, 283 (5th Cir. 2009).

[16] U.S.S.G. § 2G1.3(b)(3)(B).

[17] *See, e.g.*, *United States v. Pringler*, 765 F.3d 445, 455 (5th Cir. 2014) (upholding the computer use enhancement where a defendant purchased a computer, showed his girlfriend how to use the webcam feature, and "knew of [his girlfriend]'s use of the computer for advertising [the victim]'s services").

found that Washington was involved in a "jointly undertaken criminal activity," a finding which is supported by the record. Because of that, Washington is responsible for all reasonably foreseeable "acts and omissions of others" within the scope of the criminal activity taken in furtherance of the criminal activity.[18] As the district court noted at sentencing, the record supports the conclusion that Smith operated a Backpage.com account to entice people to engage in sexual conduct with B.R., a minor. Given Washington's participation in the joint undertaking, the district court did not err in applying the computer use enhancement to Washington's sentence.

3.

Because we find no procedural error in Washington's sentence, we turn next to its substantive reasonableness.[19] Washington argues that her sentence is "substantively unreasonable because it is greater than necessary to [e]ffect the purposes of sentencing" and "in light of her offense conduct." Washington also states that "[she] was a victim of [Smith] as well."

The district court sentenced Washington to 292 months, which was at the bottom of her Guidelines range. A sentence within the properly calculated Guidelines range is presumptively reasonable.[20] To overcome this presumption, Washington must demonstrate that "the district court improperly considered a factor, failed to take into account a factor, or made a clear error in balancing the factors."[21] She has not done so here.

4.

Lastly, Washington claims that her sentence is cruel and unusual punishment, and thus unconstitutional, relying on the same arguments as her

---

[18] *See* U.S.S.G. § 1B1.3(a)(1)(B).

[19] *Groce*, 784 F.3d at 294 (internal citations and quotation marks omitted).

[20] *United States v. Tuma*, 738 F.3d 681, 695 (5th Cir. 2013).

[21] *Id.* at 695.

reasonableness claim. Eighth Amendment challenges are generally reviewed de novo, but because Washington raises her Eighth Amendment challenge for the first time on appeal, it reviewed for plain error.[22]

The Eighth Amendment "has been read to preclude a sentence that is greatly disproportionate to the offense, because such sentences are 'cruel and unusual.'"[23] Yet this court has held that it will not "substitute its judgment for that of the legislature nor of the sentencing court as to the appropriateness of a particular sentence," and thus "successful Eighth Amendment challenges to prison-term lengths will be rare."[24]

When faced with an Eighth Amendment challenge, "this court first makes a threshold comparison of the gravity of the offense against the severity of the sentence. Only if we determine that the sentence is 'grossly disproportionate to the offense' will we compare [the defendant's] sentence to sentences for similar crimes in this and other jurisdictions."[25]

Washington's conviction stems from her participation in the sex trafficking of a fourteen-year-old child. The Supreme Court has upheld a forty-year sentence and $20,000 fine for possession and distribution of approximately nine ounces of marijuana.[26] Based on that benchmark, we find that a 292-month sentence for involvement in child sex trafficking does not rise to the level of cruel and unusual punishment.

---

[22] *United States v. Helm*, 502 F.3d 366, 367 (5th Cir. 2007). On plain error review, a defendant must show: "(1) there was legal error, (2) the error was plain, (3) the error affected [the defendant's] substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.*

[23] *United States v. Thomas*, 627 F.3d 146, 160 (5th Cir. 2010).

[24] *Id.* at 160. *See also Solem v. Helm*, 463 U.S. 277, 290–91 (1983) ("[O]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences will be exceedingly rare.") (internal quotation marks omitted).

[25] *Thomas*, 627 F.3d at 160.

[26] *Hutto v. Davis*, 454 U.S. 370, 370 (1982) (per curiam).

No. 17-30065

III.

We now turn to Smith's argument that the district court violated his Sixth Amendment right to counsel. At Smith's initial appearance, he was represented by counsel from the Office of the Federal Public Defender. Smith subsequently filed a pro se motion to terminate the representation. The magistrate judge terminated the appointment due to an "irreconcilable conflict" between Smith and his counsel, denied Smith's motion to proceed pro se, and appointed Joseph Woodley, now appellate counsel, as substitute counsel. The magistrate judge held that Smith could refile his motion "[i]f, after spending a reasonable amount of time with Mr. Woodley discussing his case, [he] still insists on representing himself."[27]

Smith later refiled his motion to proceed pro se, and the magistrate judge ordered a *Faretta* hearing. At the hearing, the magistrate judge told Smith that this was "a terrible idea" and warned him: "You can't come in on the morning of trial when a jury is sitting there and go, 'I changed my mind, Judge . . . I decided I can't do it,' because then we'll think you're just doing it for delay purposes." The magistrate judge then granted the motion and appointed Woodley as his standby counsel.

On the morning of trial, Smith filed a Motion to Reassert Right to Counsel, claiming that he could not "adequately defend [him]self in this matter" due to "the complexities of the case" and "the psychological toll that this case has taken on [him]." In support of his motion, Smith argued:

> I have a motion right here to – Defendant's Motion to Reassert Right to Counsel. This situation has become a lot [sic] complex than I actually ever thought it would be, and I don't – I don't – I don't think that I'll be able to adequately represent myself here

---

[27] In doing so, the court reminded the defendant that "the charges against him in this matter are very serious and . . . he may be subject to an extensive term of imprisonment." Therefore, "the court strongly suggest[ed] that Defendant allow Mr. Woodley to serve as his counsel throughout the remainder of the proceedings."

today or to even be emotionally detached to put myself in a position to be able to represent me to the point to where I can question people without offending this Court.[28] I don't want to offend the court, and I know that my emotions will pretty much offend the court if I'm directly questioning or anything. I just want to reassert my right to counsel and I want to terminate my pro se motion, you know.

The court asked Smith whether he was asking for "a continuance," and Smith initially responded "if that's what it takes." The district court asked for clarification, saying: "I'm not putting words in your mouth. My question to you: are you asking for a continuance on the basis that you no longer wish to represent yourself, after a full hearing and granting of that motion?" Smith said yes. The government objected "to any continuance."

The court began to rule on the motion, stating:

At this particular point in time, standby counsel has been appointed for you and is available to you throughout the course of this. Simply because on the day of the trial you attempt to manipulate the judicial process . . . by then telling this court that you no longer wish to represent yourself –

Smith seized on the mention of standby counsel, stating:

Actually, Your Honor, I mean, I've written several letters to Mr. Woodley. He, I'm pretty sure, can tell you that I've written several letters to him explaining to him that this is becoming overwhelming for me and that it's becoming a real problem because I'm not able to adequately represent myself the way I wanted to represent – that I thought I would be able to. I – I just won't be able to represent myself adequately, and I'm asking to reassert my right to counsel.

---

[28] This was after he had been warned about offending the court and the possibility of sanctions.

The court replied, "I understand your reassertion of your right to counsel. It's denied at this time. We will proceed to trial. You have standby counsel who has been appointed and been with you the entire time."

The court later ruled on the written motion, stating that it "believe[d] that [the motion] [was] nothing more than an attempt to delay the trial of this case." The court then read transcripts from Smith's *Faretta* hearing where the magistrate judge had warned about the risks of self-representation. The court concluded that "[i]n this particular instance, the defendant's motion to reassert his right to counsel is considered to be nothing more than an attempted delay tactic, and this matter will proceed to trial."

On appeal, Smith contends that this denial violated his Sixth Amendment right to counsel. "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."[29] The right to counsel "occupies an elevated status among fundamental constitutional rights."[30] A defendant may waive this right and proceed pro se if he chooses. Once he does so, "our Court has held that ordinarily the waiver can be withdrawn and the right to counsel can be reasserted."[31]

The post-waiver right to counsel is not unqualified.[32] We have held that a defendant is "not entitled to choreograph special appearances by counsel, or repeatedly to alternate his position on counsel in order to delay his trial or otherwise obstruct the orderly administration of justice."[33] At the same time,

---

[29] U.S. CONST. amend. VI.

[30] *United States v. Pollani*, 146 F.3d 269, 274 (5th Cir. 1998) (citing *Gideon v. Wainwright*, 372 U.S. 335, 342–43 (1963); *Powell v. Alabama*, 287 U.S. 45, 68 (1932)).

[31] *Id.* at 273.

[32] "Of necessity, the right to reassert a previously waived right of counsel has its boundaries." *Id.*

[33] *United States v. Taylor*, 933 F.2d 307, 311 (5th Cir. 1991) (internal citations and quotation marks omitted). *See also Pollani*, 146 F.3d at 273 ("[A] pro se litigant may not abuse his right [to counsel] by strategically requesting special appearances by counsel or by

a trial court must have some basis for concluding that a defendant is attempting to delay or obstruct the proceedings.[34] And to be sure, the district court, understandably frustrated, may have had reason to believe that Smith's primary motive was to delay his trial—an outcome that would have affected not only his own trial, but also that of his co-defendant.

But a court must also determine whether appointing counsel will *require* delay. In *United States v. Pollani*, we held that even where a defendant is "vigorously attempting to delay the start of trial," a district court still cannot deny his motion to be represented by counsel without reason to think that the representation would impede the orderly administration of justice.[35] In *Pollani*, we reversed a district court's denial of a pro se defendant's motion to substitute counsel four days before trial.[36] The motion came after Pollani had fired two lawyers, elected to proceed pro se, and then retained counsel and sought a continuance and a substitution of counsel.[37] The district court denied the continuance, and Pollani requested "that [the lawyer] still be available to represent [him] as counsel" and said they would "just have to do a lot of cramming" in the four days until trial.[38] The court denied the motion to substitute counsel. On appeal, we upheld the court's denial of the continuance, but we found that the court erred in denying Pollani's motion to be represented by his chosen counsel.[39] We distinguished Pollani's situation from a scenario

---

repeatedly altering his position on counsel to achieve delay or obstruct the orderly administration of justice.").

[34] *Cf. Taylor*, 933 F.2d at 311 (finding "no support" for district court's refusal to allow the defendant to re-assert the right to counsel where there is "no suggestion whatever that [he] was attempting to abuse his rights to achieve some mischief, or that granting his request would have interfered in any way with the calendaring of his sentencing").

[35] *Pollani*, 146 F.3d at 273.

[36] *Id.* at 274.

[37] *Id.*

[38] *Id.* at 271.

[39] *Id.* at 274.

where "the defendant was only deprived of exercising the right to counsel in a particular way which would unjustifiably delay the trial process."[40] In doing so, we specifically held that if "no delay [is] required for [a defendant] to exercise his right" to be represented by counsel rather than himself, then the defendant shall have "the option to be represented by counsel to the extent that he [can] do so without interrupting the orderly processes of the court."[41]

*Pollani* is plain in its teaching that a district court can deny a motion seeking appointment of counsel—including the elevation of standby counsel to trial counsel—when a defendant's untimely request would result in delay. But there is no showing here that this was the circumstance. The district court focused on Smith's *purpose*, finding that the motion was "nothing more than an attempted delay tactic." Based on that finding, the district court was entitled to deny a continuance to allow counsel to prepare for Smith's defense. But *Pollani* teaches us that when a pro se litigant asks to be represented by counsel, we are to look at the *effect* of the requested appointment or substitution of counsel. A district court should make the appointment absent a finding that it "would impede the orderly administration of justice."

It is not apparent from this record that elevating standby counsel to counsel would have generated more delay than Smith's unskilled efforts to represent himself, about which Washington complained. As the district court noted, standby counsel was present in the courtroom. The record demonstrates that he was familiar with the case, having been appointed to represent Smith prior to his *Faretta* hearing and having handled some pretrial telephone conferences without Smith. On these facts, standby counsel may have been

---

[40] *Id.* at 273.
[41] *Id.* at 273–74.

prepared to take over Smith's defense without delay. We do not know because the district court did not inquire into standby counsel's readiness to step in.[42]

Smith was entitled to representation to the extent that standby counsel could take over representation "without interrupting the orderly processes of the court."[43] Because the record does not demonstrate that the elevation of standby counsel to trial counsel would invariably work a delay and require a continuance, we conclude that Smith was deprived of a fundamental constitutional right, and his convictions must be reversed.[44]

## IV.

We AFFIRM Washington's conviction and sentence, and we REVERSE Smith's convictions and REMAND for further proceedings consistent with this opinion.

---

[42] Of course, the Sixth Amendment guarantees Smith's right to *effective* assistance of counsel. Here, standby counsel did not remark on his readiness to take on Smith's defense. If standby counsel indicated that he was not sufficiently prepared, this might present a different case, requiring us to decide whether, as seems implicit in *Pollani*, a defendant who files such a motion so close to trial waives any claims based on deficiencies in performance for want of adequate preparation due to standby counsel's elevation to counsel. But that concern is not presented by the record before us.

[43] *Pollani*, 146 F.3d at 273–74.

[44] Because we find that the district court committed reversible error on this issue, we need not address Smith's remaining arguments.

No. 17-30065

EDITH H. JONES, Circuit Judge, concurring and dissenting:

The majority today reverses and remands Tyrone Smith's convictions for sex trafficking a fourteen-year-old girl and prostitution by coercion or enticement because the district court denied Smith's motion to reassert his right to counsel on the morning his trial was to begin. Because the district court did not abuse its discretion by denying Smith's motion, I respectfully dissent. (I concur in that part of the opinion which affirms the conviction of Smith's codefendant Lacoya Washington.)

As the majority notes, the magistrate judge told Smith, upon granting his motion to proceed pro se: "You can't just come in on the morning of trial when a jury is sitting there and go, 'I changed my mind, Judge . . . I decided I can't do it,' because then we'll think you're doing it just for delay purposes." The district court, presented with this exact situation (in addition to a motion for the judge to recuse that Smith had put together four days earlier), reasonably determined that Smith was merely attempting to delay the orderly administration of justice. It was not an abuse of discretion for the district court, faced with these circumstances, to deny Smith's motion.

The majority cites *Pollani* for the proposition that a district court abuses its discretion if it refuses a defendant's last-minute motion to reassert his right to counsel without a finding that it "would impede the orderly administration of justice." This is at best an overstatement. *Pollani* stated, in the full text of the sentence, that "[t]he district judge did not state-*and there is no reason to think*-that [retained counsel]'s appearance would impede the orderly administration of justice." *United States v. Pollani*, 146 F.3d 269, 273 (5th Cir. 1998) (emphasis added).

*Pollani* is readily distinguishable from Smith's case. Pollani reasserted his right to counsel four days before trial, not on the morning of, and he

17

"unequivocally stated . . . that he wished to be represented at trial by [retained counsel], even if the continuance was denied." *Pollani*, 146 F.3d at 273. Smith made no such statement. Indeed, he did not outright request that standby counsel step in as trial counsel. Smith explained that he had written letters to standby counsel in which he complained that he could not adequately represent himself because the process was overwhelming. Further, the district court did have "reason to think" that standby counsel's appearance would impede the orderly administration of justice. Although the district court did not inquire whether standby counsel was ready to proceed immediately, the court had reason to believe that standby counsel would need at least some continuance in order to mount an effective defense.

I also take issue with the majority's opinion to the extent it purports to read *Pollani* as requiring that the district court always state on the record whether appointing new counsel or elevating standby counsel will impede the orderly administration of justice. *Pollani* did not require as much, and we should avoid imposing talismanic phrases on the district court when they are not needed. I would affirm Smith's convictions.