# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 29, 2020

Lyle W. Cayce
Clerk

No. 19-20401

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

KENNETH J. COLEMAN,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CR-156-1

Before JONES, HAYNES, and HO, *Circuit Judges*.

PER CURIAM:[*]

Kenneth Coleman appeals his convictions for several financial and tax crimes, claiming that his waiver of counsel was invalid and that the district court should have honored his subsequent reassertion of the right to counsel. We find that his waiver of counsel was valid, and that his subsequent

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

reasserttion of the right to counsel would have delayed his trial, so the judgment of the district court is AFFIRMED.

## I. Background

A jury convicted Kenneth Coleman of several financial and tax crimes arising from a scheme in which prescription drugs were purchased cheaply from Medicaid patients and resold for large concealed profits on which taxes were not paid. Coleman represented himself at trial. His pro se defense theory was based on the proposition that the court lacked jurisdiction over him due to his status as Rahsaan Malik Bey, a "Moorish American National" and member of the "Moorish Divine and National Movement of the World."[1]

Coleman's first lawyer was Richard Kuniansky, appointed in September 2017. Kuniansky was allowed to withdraw due to a conflict of interest arising from his prior representation of a potential witness.

Coleman's next appointed counsel was Wendell Odom. Trial was set for August 8, 2018. On July 20, Coleman moved to replace Odom on the ground that Odom's representation was unsatisfactory. The Government opposed the motion on the ground that it was a ploy to delay the trial. After an unrecorded ex parte hearing on Odom's performance, the court denied

---

[1] In support of his argument that the court lacked jurisdiction, Coleman asserted that "descendants of the Moorish Empire" were not citizens of the "Union States Rights Republic (U.S.A.)," and that — pursuant to the "The Free Moorish American Zodiac Constitution" and a treaty between the United States and the Kingdom of Morocco — he was therefore not subject to taxation or the civil or criminal jurisdiction of United States courts. Coleman further claimed that the United States is a corporate entity which "can not be an injured party," and that the district court was required to produce a "certified delegation of authority order."

Coleman's approach is like that of defendant Mesquiti, who also claimed he was part of a "sovereign citizen" movement "not subject to state or federal statutes and proceedings." *United States v. Mesquiti*, 854 F.3d 267, 269 (5th Cir. 2017).

the motion but granted an opposed motion to continue the trial until October 26. Coleman re-urged his motion for substitution of counsel and noted that he had filed a state bar grievance against Odom. The case was transferred to another judge and the new court initially denied the re-urged motion. But then Odom filed a motion to withdraw. At a hearing on September 21, Odom said he wanted to withdraw due to Coleman's grievance. Gerardo Montalvo replaced Odom.

At this point, just prior to a status conference on October 2, Coleman appears to have adopted the strategy to challenge the court's jurisdiction. At that conference, Coleman announced that Montalvo would not be representing him because Coleman was a Moorish American National, and Montalvo was not. Coleman also insisted that he was no longer Kenneth Coleman but Rahsaan Malik Bey, and he presented documents intended to challenge the district court's jurisdiction.

Consequently, on October 11, the court held a *Faretta*[2] hearing to determine if Coleman was validly waiving his right to counsel and intending to represent himself at trial. Coleman stated that he studied law at a law firm but had never represented himself. The court ascertained that Coleman understood the charges against him and the possible penalties upon conviction. Coleman said he was "vaguely" familiar with the Federal Rules of Evidence and "somewhat" familiar with the Federal Rules of Criminal Procedure. The court "strongly urge[d]" Coleman not to represent himself. Then the following colloquy took place:

> THE COURT: Now, in light of the penalties that you could suffer if you're found guilty and in light of all of the difficulties of representing yourself, do you still desire to

---

[2] *See Faretta v. California*, 422 U.S. 806 (1975) (addressing the right of self-representation and the right to counsel).

represent yourself and to give up your right to be represented by a lawyer?

>THE DEFENDANT: Yes.

>THE COURT: Is your decision entirely voluntary?

>THE DEFENDANT: Under threat, duress, and coercion.

>THE COURT: Okay. Is your decision entirely voluntary to represent yourself?

>THE DEFENDANT: Yes.

The court found that Coleman had "knowingly and voluntarily waived the right to counsel," and he was allowed to represent himself at trial.

Montalvo agreed to act as standby counsel. The trial was set to begin on November 5, 2018. On October 18, Coleman then filed an "Affidavit of Fact" in which he recanted the waiver of his right to counsel and denied waiving any rights. The Government opposed the reappointment of counsel.

Ten days before trial, on October 26, the court held another hearing at which Coleman asked that Montalvo be re-appointed full counsel for trial. The court asked Montalvo, "if you were to be willing to accept appointment as fully-appointed counsel, would you be prepared to try this case on the current timeline, jury selection on Monday, November 5th? It is just a yes or a no." Montalvo answered "no." The court then summarized the proceedings, starting with the indictment in March 2017. The court noted three continuances and three appointments of attorneys experienced in white-collar criminal defense, two of whom were removed on Coleman's insistence. The court also recounted the *Faretta* hearing at which Coleman validly waived his right to counsel. Finally, the court said:

>I have now made an inquiry of Mr. Montalvo, that he would not be ready, having not examined anything due to Mr. Coleman denying any kind of contact with Mr. Montalvo,

> to proceed to jury selection based upon the fourth continuance in this case. Therefore, I find Coleman's motion to withdraw his waiver of appointed counsel should be denied.
>
> This case is going to trial on schedule, and that's all I have got to say. It will go.

In its written order, the district court found that Coleman's purpose was delay and it concluded that granting appointment of counsel would require delay.

At trial, Coleman repeatedly stated that he was "not ready" in response to all of the court's questions. However, he cross-examined some witnesses about their involvement in the scheme, the ownership of business entities or bank accounts relevant to the scheme, and their possible agreements with the Government. He also called a defense witness to testify about the ownership and operation of some of the companies.

The jury convicted Coleman on all counts. Coleman refused to be interviewed for the presentence report (PSR) and refused even to receive it. At sentencing, he vigorously reasserted his jurisdictional arguments. The court varied upward from the advisory guideline range of 235 months to impose a total sentence of 360 months, in addition to supervised release, fines, restitution, and forfeiture.

Now represented by appellate counsel, Coleman contends that he did not validly waive his right to counsel, and that the district court should have honored his subsequent reassertion of the right to counsel.

## II. Discussion

Coleman makes two claims. First, he claims that his waiver of counsel under *Faretta* was not knowing and voluntary. Second, Coleman contends that the district court violated his right to counsel when the court denied his motion for reappointment of counsel, which was heard ten days prior to Coleman's trial. Both are without merit.

## A. Initial Waiver of Counsel

Coleman contends that his waiver of counsel under *Faretta* was not knowing and voluntary. He argues that when he told the court that his decision to represent himself was "[u]nder threat, duress, and coercion," the court was obligated to inquire further, rather than simply to ask again whether the decision was "entirely voluntary." "Sixth Amendment challenges to the validity of a waiver of counsel are reviewed de novo." *United States v. Mesquiti*, 854 F.3d 267, 271 (5th Cir. 2017).

As the Government correctly observes, by asserting force, coercion, and duress, Coleman was simply repeating a phrase that was a standard part of his jurisdictional challenge to the court's authority. Coleman's reiteration of this phrase does not establish that his decision to proceed pro se was involuntary. *Cf. Mesquiti*, 854 F.3d at 270-71, 274-75 (declining to find that general objections to the court's authority showed that the waiver of counsel was invalid). After reasserting his jurisdictional challenge, the government asked again if his decision was voluntary, and he said yes. We therefore find that his initial waiver of counsel was knowing and voluntary.

## B. Reassertion of Right to Counsel

In any event, "a defendant who waives the right to counsel is entitled to withdraw that waiver and reassert the right," though the right is "not unqualified." *United States v. Taylor*, 933 F.2d 307, 311 (5th Cir. 1991); *see United States v. Smith*, 895 F.3d 410, 421 (5th Cir. 2018); *United States v. Pollani*, 146 F.3d 269, 273 (5th Cir. 1998). Thus, even though we deem his initial waiver of counsel valid, this court must also inquire whether the district court should have honored Coleman's reassertion of the right to counsel. *See Smith*, 895 F.3d at 421-22; *Pollani*, 146 F.3d at 273-74.

Coleman contends that the district court violated his "Sixth Amendment right to counsel when the court denied his motion for

reappointment of counsel, which was heard ten days prior to Coleman's trial." As noted, the right to withdraw a waiver of counsel and reassert the right to counsel "is not unqualified." *Smith*, 895 F.3d at 421. A defendant is "not entitled to choreograph special appearances by counsel, or repeatedly to alternate his position on counsel in order to delay his trial or otherwise obstruct the orderly administration of justice." *Id.* (quoting *United States v. Taylor*, 933 F.2d at 311.) However, Coleman "was entitled to representation to the extent that standby counsel could take over representation without interrupting the orderly processes of the court." *Smith*, 895 F.3d at 422 (internal quotation marks and citation omitted).

As *Pollani* held and *Smith* recognized, the right to counsel is qualified by a court's valid but entirely distinct interest in avoiding delay. *See Smith*, 895 F.3d at 421 (featuring a defendant reasserting his right to counsel); *Pollani*, 146 F.3d at 272-73 (same). Before denying a motion for counsel, a trial court must examine "whether appointing counsel will require delay." *Smith*, 895 F.3d at 421; *United States v. Pollani*, 146 F.3d at 273.

In *Polani*, the standby counsel was "retained and ready to act as trial counsel." *Pollani*, 146 F.3d at 272. Therefore, our court found that "there is no reason to think [that the lawyer's] appearance would impede the orderly administration of justice. Quite to the contrary, there is every reason to believe that the trial would have proceeded much more efficiently if Pollani had been represented by counsel rather than himself." *Id.* at 273. And in *Smith*, we found that it "is not apparent from this record that elevating standby counsel to counsel would have generated more delay than Smith's unskilled efforts to represent himself…The record demonstrates that [standby counsel] was familiar with the case, having been appointed to represent Smith prior to his *Faretta* hearing and having handled some pretrial telephone conferences without Smith. On these facts, standby counsel may have been prepared to take over Smith's defense without delay."

Here, however, Coleman refused to even speak with Montalvo until the morning of the day he asked for Montalvo to be elevated to full counsel, and Coleman had even threatened to file a bar grievance against Montalvo. Montalvo was unable to examine anything due to Coleman denying any kind of contact. The district judge asked Coleman's standby lawyer if he could be prepared to serve as full counsel in 10 days. The lawyer said no. Further, the district judge issued a written order finding that "granting Coleman's request to re-appoint counsel at this stage would require delay." Therefore, this case is distinguishable from *Pollani* and *Smith*. This case was a complex white collar criminal trial that Montalvo was unprepared for because Coleman had denied Montalvo almost all contact. Montalvo's elevation to full counsel would have necessitated delay, and the trial court so found in a written order. Therefore, Coleman was not unconstitutionally deprived of his right to counsel when the district court declined to elevate Montalvo to full counsel.

### III. Conclusion

Coleman's initial waiver of counsel was knowing and voluntary, and his request for elevation of standby counsel was properly denied because it would have necessitated his delay. Accordingly, the judgment of the district court is **AFFIRMED**.